UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN SHRIMP PROCESSORS ASSOCIATION,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant.* | Court No. 25-00026 |

# COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, the American Shrimp Processors Association ("ASPA" or "Plaintiff"), by and through its undersigned attorneys, hereby files the instant complaint and alleges as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff contests certain aspects of the final determination issued by the U.S. Department of Commerce ("Commerce") in its countervailing duty ("CVD") investigation of frozen warmwater shrimp from Ecuador. The final determination was published by Commerce in the Federal Register as *Frozen Warmwater Shrimp from Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Dep't Commerce Oct. 28, 2024) ("*Final Determination*"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador*, Inv. No. C-331-806 (Oct. 21, 2024) ("Issues and Decision Memorandum").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That

section confers on the U.S. Court of International Trade jurisdiction to review final determinations issued by Commerce under Section 516A(a)(2)(A)(i)(II) and (B)(i) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i).

## STANDING

3.  The ASPA is a trade association, a majority of whose members manufacture, produce, or wholesale the domestic like product in the United States. Consequently, the ASPA is an "interested party" as defined by 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(E). Additionally, the ASPA was the petitioner and an active participant in the CVD investigation which resulted in the contested determination that is the subject of this appeal. Accordingly, the ASPA has standing pursuant to 19 U.S.C. § 1516a(d) as a party to the proceeding in connection with which this Complaint arises and is entitled to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4.  Section 516A(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within thirty (30) days of the date of publication in the Federal Register of the CVD order based upon the contested determination, and the complaint must be filed within thirty (30) days thereafter. *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(II). On January 23, 2025, within thirty (30) days of the publication of the CVD order on December 26, 2024, the ASPA filed a summons with this Court. The ASPA is filing this Complaint within the time specified in Section 516A(a)(2)(A)(i)(II) of the Act. *See* U.S. Court of International Trade Rule 6(a)(1); *see also* 28 U.S.C. § 2636(c). Thus, this action is timely brought.

## STANDARD OF REVIEW

5.  This Court reviews final determinations issued by Commerce pursuant to 19

U.S.C. § 1671d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

6. On October 17, 2023, the ASPA submitted a CVD petition concerning unfairly traded imports of frozen warmwater shrimp from Ecuador. The ASPA alleged that processors of frozen warmwater shrimp, as well as producers of fresh shrimp (*e.g.*, shrimp farmers and fishermen), in Ecuador benefited from countervailable subsidies. The ASPA requested that Commerce initiate a CVD investigation into various subsidy programs and take into account the full extent that processed frozen warmwater shrimp benefited from countervailable subsidies to fresh shrimp.

7. On November 14, 2023, Commerce initiated a CVD investigation into imports of frozen warmwater shrimp from Ecuador. *See Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigations*, 88 Fed. Reg. 81,053, 81,056 (Dep't Commerce Nov. 21, 2023). Commerce explained the basis for its decision to initiate the CVD investigation in the Ecuador CVD Initiation Checklist, which stated that the ASPA supported its allegations that countervailable subsidies benefiting fresh shrimp may be attributable to frozen warmwater shrimp.

8. On December 7, 2023, Commerce selected Industrial Pesquera Santa Priscila S.A. ("Santa Priscila") and Sociedad Nacional de Galápagos C.A. ("SONGA") as the mandatory respondents in the CVD investigation.

9. On January 8, 2024 and February 21, 2024, the ASPA filed new subsidy allegations and requested, *inter alia*, that Commerce investigate whether the shrimp sector in Ecuador benefited from the provision of fuel for less than adequate remuneration and the

3

provision of brackish water for less than adequate remuneration.

10. On March 21, 2024, Commerce initiated a CVD investigation with respect to four additional subsidy programs, including the provision of fuel for less than adequate remuneration and the provision of brackish water for less than adequate remuneration.

11. On April 1, 2024, Commerce published in the Federal Register its preliminary affirmative determination in the CVD investigation of frozen warmwater shrimp from Ecuador. *See Frozen Warmwater Shrimp from Ecuador: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With the Final Antidumping Duty Determination*, 89 Fed. Reg. 22,379 (Dep't Commerce Apr. 1, 2024), *as amended*, 89 Fed. Reg. 31,722 (Dep't Commerce Apr. 25, 2024) ("*Preliminary Determination*"). Commerce set forth its preliminary findings and conclusions in the accompanying *Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador*, Inv. No. C-331-806 (Mar. 25, 2024) ("Preliminary Decision Memorandum").

12. Santa Priscila and SONGA reported cross-ownership with 71 entities and 44 entities, respectively. *See* Preliminary Decision Memorandum at 7–8. However, Commerce instructed Santa Priscila and SONGA to respond to Commerce's requests for information on behalf of a limited number of cross-owned entities. *Id.* Santa Priscila submitted information on behalf of itself and a total of four cross-owned affiliates: Manesil S.A. (a holding company), Produmar S.A. (a supplier of fresh shrimp), Tropack S.A. (a toll processor), and Egidiosa S.A. (a supplier of shrimp fry). *Id.* at 8. SONGA submitted information on behalf of itself and a total of three cross-owned affiliates: Naturisa S.A. (a supplier of fresh shrimp), Holding Sola & Sola Solacciones S.A. (a holding company), and Empacadora Champmar S.A. (a holding company).

*Id.* Subsidies to these cross-owned entities were included in the subsidy analysis pursuant to 19 C.F.R. § 351.525(b)(6). *Id.* All other cross-owned entities did not participate in the CVD investigation and were excluded from the subsidy analysis.

13. Commerce preliminarily determined that Section 771B of the Act, 19 U.S.C. § 1677-2, applied in this investigation. *Id.* at 9–10. Consequently, subsidies to non-cross-owned suppliers of fresh shrimp were deemed to be provided to the mandatory respondents and their manufacture, production, or exportation of frozen warmwater shrimp. Commerce did not request that the mandatory respondents submit information on subsidies to non-cross-owned suppliers of fresh shrimp. *Id.* at 10. As a result, the administrative record did not contain information on subsidies to each mandatory respondent's non-cross-owned suppliers of fresh shrimp. Thus, for purposes of Section 771B of the Act, 19 U.S.C. § 1677-2, Commerce preliminarily determined the amount of subsidization to non-cross-owned suppliers of fresh shrimp based on information relating to Santa Priscila's in-house production of fresh shrimp as well as the limited number of reporting cross-owned suppliers of fresh shrimp (*i.e.*, Produmar S.A. and Naturisa S.A.). *Id.* at 10–11.

14. On July 12, 2024, Commerce issued a memorandum with its preliminary analysis of certain subsidy programs that were not addressed in the *Preliminary Determination* (hereinafter, the "First Post-Preliminary Determination"). Commerce declined to countervail the provision of fuel because, despite the fact that the fuel was supplied by EP Petroecuador (a government-owned petroleum company), the mandatory respondents purchased the government-produced fuel from private trading companies and distributors, rather than directly from state-owned fuel suppliers. Thus, Commerce concluded that the mandatory respondents did not receive a financial contribution. Commerce also declined to countervail the provision of brackish

water, because, even though the mandatory respondents obtained government authorization to access brackish water from public water sources, a countervailable benefit did not exist since there is no fee for non-consumptive use of brackish water and the mandatory respondents were responsible for all infrastructure costs to transport brackish water to and from their facilities.

15. Between July 15, 2024 and July 24, 2024, Commerce verified the information reported in the questionnaire responses submitted by Santa Priscila, SONGA, and the government of Ecuador.

16. Between August 14, 2024 and September 3, 2024, Commerce issued reports that summarized the methods, procedures, and results collected during the verification of Santa Priscila, SONGA, and the government of Ecuador.

17. On September 13, 2024, the ASPA and respondent interested parties filed case briefs with Commerce requesting that changes be made to certain aspects of the *Preliminary Determination* and the First Post-Preliminary Determination. On September 20, 2024, the ASPA and respondent interested parties submitted rebuttal briefs.

18. On October 10, 2024, Commerce rejected the case brief and rebuttal brief filed by the respondent interested parties for containing untimely new factual information. The respondent interested parties resubmitted redacted versions of their case brief and rebuttal brief on October 11, 2024.

19. On September 26, 2024, Commerce issued a memorandum with its preliminary analysis of certain subsidy programs that were not addressed in the *Preliminary Determination* or in the First Post-Preliminary Determination (hereinafter, the "Second Post-Preliminary Determination").

20. On October 2, 2024, the ASPA and respondent interested parties filed case briefs

6

with Commerce requesting that changes be made to certain aspects of the Second Post-Preliminary Determination. On October 7, 2024, the ASPA and respondent interested parties submitted rebuttal briefs.

21.   On October 16, 2024, Commerce held a public hearing during which the ASPA and respondent interested parties discussed the issues raised in case and rebuttal briefs.

22.   On October 21, 2024, Commerce published its final affirmative CVD determination in the Federal Register. *See Final Determination*, 89 Fed. Reg. at 85,506. Commerce determined final net countervailable subsidy rates of 3.57 percent for Santa Priscila and 4.41 percent for SONGA, from which Commerce established an "all others" rate of 3.78 percent. *Id.* at 85,507.

23.   On December 26, 2024, based on the final affirmative CVD determination, Commerce published the CVD order on frozen warmwater shrimp from Ecuador. *See Frozen Warmwater Shrimp from Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp from Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 89 Fed. Reg. 104,982 (Dep't Commerce Dec. 26, 2024).

## CLAIMS AND BASES FOR RELIEF

### COUNT ONE

24.   Plaintiff hereby incorporates by reference paragraphs 1 through 23 of this Complaint.

25.   Santa Priscila and SONGA each reported purchasing inputs from cross-owned companies, including fresh shrimp from cross-owned shrimp farms. After the deadline to notify Commerce of any reporting difficulties had passed, both of the mandatory respondents requested to be excused from submitting complete questionnaire responses on behalf of their cross-owned

7

input suppliers.

26. Despite the ASPA's objections, and without stating any rationale for its decision, Commerce granted the request and required each mandatory respondent to submit complete questionnaire responses for only one cross-owned supplier of fresh shrimp. Specifically, Commerce required Santa Priscila to submit a response on behalf of Produmar S.A. and SONGA to submit a response on behalf of Naturisa S.A. In total, Santa Priscila provided subsidy information for only four out of a total of 71 cross-owned entities, and SONGA provided subsidy information for only three out of a total of 44 cross-owned entities.

27. The ASPA again objected to the exclusion of cross-owned input suppliers and expressed concerns that Commerce will not have a complete picture of the full range of subsidies attributable to the mandatory respondents. Commerce did not revisit its decision to excuse the mandatory respondents from their reporting obligations and require questionnaire responses for only a limited number of cross-owned entities.

28. In its case brief, the ASPA continued to object to Commerce's decision to excuse the mandatory respondents from submitting complete questionnaire responses on behalf of most of their cross-owned suppliers of fresh shrimp. In the *Final Determination*, Commerce disagreed that it was obligated to include all cross-owned suppliers of fresh shrimp in the subsidy analysis. *See* Issues and Decision Memorandum at 32–36 (Comment 4).

29. Commerce's decision to excuse the mandatory respondents from submitting complete questionnaire responses on behalf of all cross-owned suppliers of fresh shrimp is unsupported by substantial evidence and otherwise not in accordance with law.

## **COUNT TWO**

30. Plaintiff hereby incorporates by reference paragraphs 1 through 29 of this

Complaint.

31. The mandatory respondents reported purchasing fresh shrimp from unaffiliated and cross-owned suppliers. Despite the ASPA's requests, Commerce instructed the mandatory respondents to submit complete questionnaire responses on behalf of only one cross-owned supplier of fresh shrimp and none of the unaffiliated suppliers.

32. In the *Preliminary Determination*, Commerce found that Section 771B of the Act, 19 U.S.C. § 1677-2, applied in this CVD investigation. *See* Preliminary Decision Memorandum at 9–10. The administrative record contained no information on the subsidies received by the mandatory respondents' unaffiliated suppliers of fresh shrimp. Thus, to determine the amount of subsidies attributable to the mandatory respondents under Section 771B of the Act, 19 U.S.C. § 1677-2, Commerce filled the informational gap in the record by relying on subsidy information relating to Santa Priscila's in-house production of fresh shrimp and the limited number of reporting cross-owned suppliers of fresh shrimp (*i.e.*, Produmar S.A. and Naturisa S.A.). *Id.* at 10–11.

33. In its case brief, the ASPA argued that Commerce must take steps to ensure that the subsidy benefits attributable to the mandatory respondents are not understated. Because Commerce did not otherwise include unexamined cross-owned suppliers of fresh shrimp in the subsidy analysis (*see* Count One), the ASPA proposed incorporating the unexamined cross-owned suppliers of fresh shrimp in the calculation of the benefit under Section 771B of the Act, 19 U.S.C. § 1677-2. In the *Final Determination*, Commerce declined to modify its analysis in any way to account for the volume of fresh shrimp that the mandatory respondents purchased from unexamined cross-owned suppliers. *See* Issues and Decision Memorandum at 32–36 (Comment 4).

34. Commerce's refusal to incorporate unexamined cross-owned suppliers of fresh shrimp in the calculation of the benefit under Section 771B of the Act, 19 U.S.C. § 1677-2, is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT THREE

35. Plaintiff hereby incorporates by reference paragraphs 1 through 34 of this Complaint.

36. Based on an allegation filed by the ASPA, Commerce investigated whether the government of Ecuador provided fuel to the shrimp sector for less than adequate remuneration. In the First Post-Preliminary Determination, Commerce found that the mandatory respondents' purchases of fuel do not constitute a countervailable financial contribution because the mandatory respondents purchased government-produced fuel from private trading companies and distributors, rather than directly from state-owned fuel suppliers.

37. In its case brief, the ASPA demonstrated that the mandatory respondents were indirect recipients of a countervailable financial contribution when they purchased government-produced fuel from private traders and distributors. In the *Final Determination*, Commerce made no changes to its analysis in the First Post-Preliminary Determination and continued to find that the purchases of government-produced fuel are not countervailable because the mandatory respondents were not direct recipients of a financial contribution. *See* Issues and Decision Memorandum at 22–25 (Comment 2).

38. Commerce's finding that the provision of fuel does not constitute a countervailable financial contribution is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT FOUR

39. Plaintiff hereby incorporates by reference paragraphs 1 through 38 of this Complaint.

40. Based on an allegation filed by the ASPA, Commerce investigated whether the government of Ecuador provided brackish water to the shrimp sector for less than adequate remuneration. In the First Post-Preliminary Determination, Commerce found that the government-provided access to brackish water from public water sources did not provide countervailable benefits because there is no fee for non-consumptive use of brackish water and the mandatory respondents were responsible for all infrastructure costs to transport brackish water to and from their facilities.

41. In its case brief, the ASPA demonstrated that the cost-free access to brackish water from public water sources constitutes a countervailable benefit. In the *Final Determination*, Commerce made no changes to its analysis in the First Post-Preliminary Determination and continued to find that the government-provided access to brackish water did not confer the mandatory respondents with a countervailable benefit. *See* Issues and Decision Memorandum at 18–21 (Comment 1).

42. Commerce's finding that the provision of brackish water does not confer a countervailable benefit is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT FIVE

43. Plaintiff hereby incorporates by reference paragraphs 1 through 42 of this Complaint.

44. Based on an allegation filed by the ASPA, Commerce investigated whether the

government of Ecuador provided brackish water to the shrimp sector for less than adequate remuneration. In the First Post-Preliminary Determination, Commerce found that the government-provided access to brackish water from public water sources did not provide countervailable benefits because there is no fee for non-consumptive use of brackish water and the mandatory respondents were responsible for all infrastructure costs to transport brackish water to and from their facilities.

45. At verification, Commerce uncovered evidence relating to the provision of brackish water that was inconsistent with the questionnaire responses submitted by the government of Ecuador. This evidence undermined Commerce's rationale for not countervailing the provision of brackish water in the First Post-Preliminary Determination. Specifically, Commerce discovered that users who wish to extract brackish water from public water sources must obtain government authorization and that there is a fee for the use of brackish water in some circumstances, including in one instance involving Produmar S.A. (*i.e.*, one of Santa Priscila's cross-owned suppliers of fresh shrimp).

46. In its case brief, the ASPA demonstrated that the evidence that came to light at verification warranted the application of facts otherwise available with an adverse inference to countervail the provision of brackish water for less than adequate remuneration. In the *Final Determination*, Commerce declined to apply facts otherwise available with an adverse inference and did not otherwise countervail the provision of brackish water.

47. Commerce's decision not to apply facts otherwise available with an adverse inference to countervail the provision of brackish water for less than adequate remuneration is unsupported by substantial evidence and otherwise not in accordance with law.

## **COUNT SIX**

48.    Plaintiff hereby incorporates by reference paragraphs 1 through 47 of this Complaint.

49.    Commerce determined a final net countervailable subsidy rate of 3.57 percent for Santa Priscila, 4.41 percent for SONGA, and 3.78 percent for all other producers and exporters not individually examined.

50.    In light of the errors alleged in Counts One through Five, the final rates understate the level of countervailable subsidies that benefit producers and exporters of frozen warmwater shrimp in Ecuador.

51.    Commerce determined final net countervailable subsidy rates that are unsupported by substantial evidence and otherwise not in accordance with law.

## **REQUEST FOR JUDGMENT AND RELIEF**

52. Wherefore, the ASPA respectfully requests that this Court:

   a. hold and declare that the aspects of Commerce's *Final Determination* challenged herein are unsupported by substantial evidence on the record or otherwise not in accordance with law;

   b. remand this case to Commerce for disposition consistent with the decision of this Court; and

   c. provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ Roger B. Schagrin
Roger B. Schagrin
Elizabeth J. Drake
Saad Y. Chalchal*

**SCHAGRIN ASSOCIATES**
900 7th Street, N.W.
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to American Shrimp Processors Association*

Dated: February 21, 2025

*Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies.

# **CERTIFICATE OF SERVICE**

**Frozen Warmwater Shrimp from Ecuador (Investigation**)
**C-331-806**
*American Shrimp Processors Association v. United States*, Court No. 25-00026

      The undersigned hereby certifies that, pursuant to USCIT Rule 3(f), a copy of the foregoing Complaint was served upon the following parties by certified mail, return receipt requested, on February 21, 2025:

**UPON THE UNITED STATES:**
Attorney General of the United States
Attorney-in-Charge
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Kara Westercamp
Commercial Litigation Branch – Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**UPON THE DEPARTMENT OF COMMERCE:**
Robert Heilferty, Esq.
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
14th Street and Constitution Ave., NW
Washington, DC 20230

**UPON INTERESTED PARTIES:**
Service List (C-331-806)
Frozen Warmwater Shrimp from Ecuador
INV – Investigation

Nathaniel Rickard, Esq
**Picard Kentz & Rowe LLP**
1155 Connecticut Avenue, NW
Suite 700
Washington, DC 20036

Edward T. Hayes, Esq.
**Leake & Anderson, LLP**
1100 Poydras Street
Suite 1700
New Orleans, LA 70163

Jennifer Michele Smith-Veluz, Esq.
**The Bristol Group PLLC**
1707 L Street, NW
Suite 570
Washington, DC 20036

Jarrod M. Goldfeder, Esq.
**Trade Pacific PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003

Nithya Nagarajan, Esq.
**Husch Blackwell LLP**
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, DC 20006

Andrea Ruiz
**Embassy of Ecuador**
2535 15th Street, NW
Washington, DC 20009

/s/ Roger B. Schagrin
Roger B. Schagrin